## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **TERAH C. MORRIS,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:17cv00093 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **DR. ELISABETH CAREY, et al.,** | ) | |
| Defendants | ) | |

The plaintiff, Terah C. Morris, ("Morris"), an inmate incarcerated at Red Onion State Prison, ("Red Onion"), in Pound, Virginia, and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials, all of whom are employees of the Virginia Department of Corrections, ("VDOC"), or are contractual service providers at Red Onion, have been deliberately indifferent to his serious medical needs, in violation of Eighth Amendment rights, by failing to provide adequate mental health and medical treatment to Morris for gender identity disorder, ("GID"). This case is before the court on the defendants' motions to dismiss, (Docket Item Nos. 36, 38, 47) ("Motions"). None of the parties has requested a hearing on the Motions, making them ripe for disposition. The Motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report, recommending that the Motions be granted in part and denied in part.

*I. Facts*

Morris has sued the following defendants: Dr. Elisabeth Cary,[1] Chief Psychiatrist for the State of Virginia; Dr. Denise Malone, Chief Psychologist for the State of Virginia; Frederick Schilling,[2] Health Services Director; Dr. William Lee, Western Regional Mental Health Clinical Supervisor; Earl R. Barksdale, Previous Warden; Donnie L. Trent, II, M.Ed., B.S.N, Psychology Associate I, Qualified Mental Health Professional; Terrence M. Huff, M.Ed., Psych II, Qualified Mental Health Professional Senior; T. Buchanan, M.Ed., Psychology Associate I, Qualified Mental Health Professional; Stephanie C. Fletcher, M.Ed., Psychology Associate I, Qualified Mental Health Professional; Chelsea Adams,[3] M.Ed., Psychology Associate I, Qualified Mental Health Professional; J. Artrip, Assistant Warden; Rick Saylor,[4] M.Ed., Psych II, Qualified Mental Health Professional Senior; Vicky Phipps, RNCB; D. Still, Security Captain; Larry Ross Collins, Security Lieutenant; and Dr. Everett Ellison McDuffie, Contractual Psychiatrist.[5]

In the Complaint, Morris alleged that he has been denied treatment for GID for approximately two years in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The Complaint is a stream of consciousness recital of factual allegations that is not organized by defendant, event or date. The majority of the allegations concern defendant Trent's actions. In fact, Morris's

---

[1]    Dr. Cary has notified the court that her correct first name is Meredith not Elisabeth, and her last name is spelled Cary not Carey. (Docket Item No. 36).

[2]    Schilling's surname is incorrectly spelled "Schswilling" in the Complaint.

[3]    Chelsea Adams was dismissed as a defendant based on lack of service on February 9, 2018. (Docket Item No. 80).

[4]    Saylor's name is incorrectly spelled "Sellers" in the Complaint.

[5]    Two additional defendants were named in the Complaint, but the claims against them were dismissed previously.

complaint provides scant facts with regard to several of the defendants. A more detailed summary of Morris's specific allegations against each specific defendant is set out below.

In the Complaint, Morris stated:

> I've put in request after request, and wrote letter after letter trying to receive hormonial [sic] treatment & therapy for my self-reporting [sic] gender identity disturbances by also [threatening] or attempting commitment of suicide due to me being reminded of my feeling of sadness, anxiety, depression, disconnect and self-hatred about my body and gender because the prison officials say[] the information/documents are inaccurate, there[']s no medical records at all claiming I ever received any gender-affirming health care and that policy says you have to be on hormone pills or receiving hormonial[sic] treatment therapy prior to incarceration[.] For a year and a half I fought trying to receive help also through litigation since …. December 2015. … [D]efendants knew … about my "serious medical need" and failed or otherwise [are] still failing to respond to my serious medical need by also refusing to provide me with any treatment or examine me and by not providing me an ideal individualized medical/mental health evaluation is unconstitutional…. [D]efendants violated my Eighth Amendment Constitutional rights for the deliberate indifferent in denying me mental health and medical care….

(Complaint, (Docket Item No. 1 at 14)).

The correctional defendants– all defendants except Dr. Cary, Dr. Lee and Dr. McDuffie – also have provided the court with an Affidavit from J. Messer, the Institutional Ombudsman at Red Onion. (Docket Item No. 39-1, ("Messer Affidavit")).  According to Messer, VDOC Operating Procedure, ("OP"), 866.1 sets out the Offender Grievance Procedure. (Messer Affidavit at 2-4.) Messer

stated that OP 866.1 requires complete exhaustion. (Messer Affidavit at 3.) To completely exhaust an issue under OP 866.1, an inmate must file an Informal Complaint form, followed by a formal Grievance, and, if dissatisfied with results, the inmate must appeal the decision received to the highest available level. (Messer Affidavit at 3-4.) The records provided by Messer show that Morris filed Regular Grievance No. ROSP-16-REG-00436 dated October 30, 2016, which was received November 2, 2016, by the Grievance Department. (Messer Affidavit at 21.) Morris attached Informal Complaint form No. ROSP-16-INF-01894 to this Regular Grievance.

Morris's Informal Complaint was dated October 10, 2016, and it stated:

My complaint is I'm being denied the proper & adequate [treatment] for my mental health history and since I'm deliberately being denied the diagnosis therefore I'm being left on mental health code #2 and not receiving the proper & adequate treatment for the following: … serious medical need for my self reporting … gender identity disorder. I am a victim of sexual, physical, emotional trauma…. I have a history of psychiatric hospitalization & self-mutilator & hallucinator. Dr. Carey, Dr. McDuffie, Dr. Lee, Dr. Malone, D. Trent, S. Fletcher, C. Adams, R. [Salyor], Dr. Ahson are causing me … emotional distress & mental anguish by refusing me the proper & adequate diagnosis [especially] for my gender Identity disorder.

(Messer Affidavit at 22.) Defendant Huff responded to this Informal Complaint on October 19, 2016, stating: "You are currently being monitored by your QMHP and services are provided as warranted. We will continue to seek guidance in providing services." (Messer Affidavit at 22.)

Morris's Regular Grievance No. ROSP-16-REG-00436 stated:

-4-

I'm being denied mental health treatment which is causing me tremendous emotional distress & mental anguish. The Qualified Mental Health Professional D. Trent for the Building I'm currently being housed [in,] he only talks to me for about 5 minutes and then he ends the conversation. On Friday[,] October 21, 2016[,] I was telling him I was gonna kill myself … and jump off the sink … he laughs and tries to justify so then they take me to medical and put me in 5 points. So on Saturday Ms. McCannon comes and I tell her I still want to kill myself so they keep me down. So on Sunday she asks again. I say the same thing so then she makes some calls and force me up and put me on constant watch. So on Monday she comes back[,] I tell her the same thing. She already had the paper & took me off. So on Tuesday [T]rent comes and takes me off of 15 [minute] watch. Huff tells me & him that [they're] not gonna tie me down in a camera cell, [they're] gonna do it in C-Building cause they don't like the idea I'm not being monitored. I'm not even getting full 45 [minute] to an hour office visit.

(Messer Affidavit at 21.)  Under the Section "What action do you want taken?" Morris wrote: "I want to be treated for my mental health illnesses like a normal patient and/or client would instead of being treated like a prisoner." (Messer Affidavit at 21.)

It appears that Assistant Warden J. Artrip responded to Morris's Grievance at Level I on November 18, 2016, and informed Morris that he was receiving services "as required by operating procedure."  (Messer Affidavit at 23.)  Morris appealed on November 21, 2016, writing:

There's no explanation as to why these Qualified Mental Health Professionals are continuously denying me my hormonial[sic] treatment for my self-reporting gender identity disturbances as well as to be seen by a psychiatrist or these mental health people not making arrangements for me to be seen by an unbiased outside doctor for

examination per court order. The emotional distress & mental anguish
that these people are causing me is cruel and unusual punishment.

(Messer Affidavit at 23.) At Level II, Morris's Grievance, again, was considered
unfounded and no relief offered. (Messer Affidavit at 24.)  The Level II response
noted that Level II was the last level of appeal for Morris's complaint. (Messer
Affidavit at 24.)

## II. Analysis

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal
of a complaint for "failure to state a claim upon which relief can be granted." FED.
R. CIV. P. 12(b)(6).  In *Bell Atl. Corp. v. Twombly*, the Supreme Court stated that
"a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'
requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." 550 U.S. at 555 (quoting *Papasan v.
Allain*, 478 U.S. 265, 286 (1986)). The "[f]actual allegations must be enough to
raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555
(citations omitted). Additionally, the Court established a "plausibility standard" in
which the pleadings must allege enough to make it clear that relief is not merely
conceivable but plausible. *See Twombly*, 550 U.S. at 555-63.

The Court further explained the *Twombly* standard in *Ashcroft v. Iqbal*, 556
U.S. 662, 678-79 (2009):

Two working principles underlie our decision in *Twombly*.
First, the tenet that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions.

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. …    Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. …
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

(Internal citations omitted).

Thus, as stated above, for the purpose of ruling on the defendants' motions to dismiss for failure to state a claim, this court will assume that all well-pleaded factual allegations contained in the Complaint are true.  The defendants argue that Morris's Complaint fails to state a claim for deliberate indifference to Morris's serious medical needs, and they urge the court to dismiss the claim. The correctional defendants also argue that Morris's claim should be dismissed because Morris failed to exhaust administrative remedies before filing suit. Since this ground asks the court to consider evidence outside of the pleadings,[6] insofar as the court considers this ground for dismissal, it must treat the motion as one for summary judgment. *See* FED. R. CIV. P. Rule 12(d).

The Eighth Amendment to the U.S. Constitution not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

---

[6]    The correctional defendants have submitted an affidavit from J. Messer, the Institutional Ombudsman at Red Onion, in support of their motion. (Docket Item No. 39-1.)

This includes a requirement that a state provide medical care to those it punishes by incarceration. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Godfrey v. Russell*, 2015 WL 5657037, at *8 (W.D. Va. Sep. 24, 2015) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)); *Chapman v. Rhodes*, 434 F. Supp. 1007, 1020 (S.D. Ohio 1977), *aff'd*, 624 F.2d 1099 (6th Cir. 1980), *rev'd on other grounds*, 452 U.S. 337, 344 (1981). For a prisoner to state a constitutional claim for denial of medical care, he must demonstrate that a defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle*, 429 U.S. at 106. In essence, treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). To establish liability under § 1983, a plaintiff must prove that the defendants "acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Therefore, it is insufficient to show that the prison system, generically, failed to provide adequate medical care to an inmate.

A prison official is deliberately indifferent if he knows of, but disregards, an inmate's serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994). Therefore, liability under this standard requires two showings. First, the evidence must show that the prison official subjectively recognized a serious medical need. It is not sufficient that the official should have recognized it; the official must actually have known of it. *See Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35; *Sosebee v.*

*Murphy*, 797 F.2d 179, 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978); *Rush v. Vandevander*, 2008 WL 495651, at *1 (W.D. Va. Feb. 21, 2008). Second, the evidence must show that the prison official subjectively recognized that his actions were "inappropriate in light of that risk." *Rich*, 129 F.3d at 340 n.2. It is insufficient that the official should have recognized that his actions were insufficient. *See Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001). "[D]eliberate indifference entails something more than mere negligence, … [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Questions of medical judgment are not subject to judicial review. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. *See Miltier*, 896 F.2d at 851-52; *Wright*, 766 F.2d at 849; *Estelle*, 429 U.S. at 105-06. An inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Jasper v. Mullins*, 2007 WL 3339605, at *2 (W.D. Va. Nov. 8, 2007) (quoting *Bowring*, 551 F.2d at 47-48).

First, the court will consider whether Morris's Complaint adequately alleged that each defendant acted personally to deprive him of his constitutional rights. As stated above, the majority of Morris's Complaint sets out allegations against QMHP Trent. Morris alleged that he sought treatment from Trent on April 1, 2016. On this occasion, according to Morris, Trent said that it had been determined that appropriate treatment for Morris was a visit with a QMHP every 30 days and being tied down in five-point restraints, with strip cell and 15-minute watches because

that was all that Red Onion had to offer Morris. Morris also alleged that, upon his next attempt to seek treatment from Trent on April 8, 2016, Morris advised Trent in an "urgent manner" that his situation was a "very delicate" one and constituted a "severe medical issue." On April 15, 2016, Trent told Morris that he was receiving the treatment suggested by the clinical supervisors and Dr. Cary. Morris alleged that he sought treatment again from Trent on May 11, 2016, but that Trent told him that security did not have the personnel to pull Morris from the cell for an office visit. Morris alleged that when he sought treatment from Trent again on May 24, 2016, that Trent attempted to divert the conversation to Morris's "extensive mental health history."

Morris also alleged that he was placed in five-point restraints in the Medical Department on May 16, 2016, on orders from Trent. It appears that Morris has alleged that he was held in five-point restraints until August 2, 2016. Morris alleged that, on this date, he accused Trent of falsifying documents concerning his request for treatment, to which Trent responded, "You have a mental health diagnosis but overall you have a behavioral problem and [you're] not [going to] get what you want because we don't see the feminine in you." Morris also alleged that Trent included false information in a gender dsyphoria assessment, when he stated that Morris loved to masturbate and pleasure himself with toys and that Morris had grabbed a female's vagina aggressively.

Morris further alleged that Trent responded to a request Morris sent to Barksdale and stated that Morris was receiving the recommended treatment for a personality disorder and that Morris had received medication in the past, but was then rejecting medication. Morris alleged that Trent responded to a request Morris sent to Mental Health on October 10, 2016, asking when he would be seen by a

doctor. Morris alleged that Trent stated that "it's being considered" and that there was no change in Morris's course of treatment. Morris also alleged that Trent responded to a November 13, 2016, request sent to Barksdale by stating that Morris was not on medication and did not require a follow-up appointment with a psychiatrist. Morris further alleged that Trent responded to a November 27, 2016, request that he had sent to Barksdale asking why Morris was not being allowed to go to Mental Health. Morris said that Trent responded to this request on the same day by stating, "Reviewed." Morris also alleged that Trent responded to two requests Morris sent to Barksdale on November 27 and December 6, 2016, alleging that Mental Health personnel were falsifying information about him in their notes. Morris also alleged that Trent responded to a request Morris had sent to Adams asking why he was being refused entry into the "mental health pod." Trent responded that Morris was not a candidate at that time.

Morris also alleged that Trent pulled Morris from his cell on October 21, 2016, after Morris threatened suicide. Morris alleged that Trent said that Morris was not going to get the diagnosis he wanted "because we don't see the feminine in you." Morris stated that when Morris started crying, Trent made fun of the situation and asked the security officers present whether they wanted him to place Morris in five-point restraints or not. Morris further alleged that Trent approved taking him off of all suicide precautions on October 25, 2016, even though Morris had said that he continued to feel suicidal. Morris said that Trent told him, "You have a behavior problem not mental health…." Morris said that, to prove his point, Trent showed Morris his institutional record.

With regard to Dr. Cary, as stated above, Morris alleged that Trent told him that he was receiving the treatment approved by the clinical supervisors and Dr.

Cary. Morris also alleged that he wrote Dr. Cary on six occasions requesting treatment for GID and that, in one or two of these letters, Morris threatened self harm. Morris stated that he never received any response to these letters. Morris also stated that he was told that Dr. Cary would send an email to the Mental Health Department at Red Onion and ask someone from Mental Health to speak to Morris every time she received one of these letters.

In Morris's memoranda in opposition,[7] (Docket Item No. 53-1), Morris further asserted that Dr. Cary, in her role as VDOC Chief Psychiatrist, "has instructed Red Onion's Mental Health Department to see Terah on a monthly, or more often, basis to assess for any indications of depression, anxiety or psychosis that would indicate the need for further treatment." Morris also alleged that Dr. Cary had instructed Dr. McDuffie not to provide him with any feminizing items. (Docket Item No. 53-1 at 2, 6.) Morris futher alleged that Dr. Cary "has told the Mental Health Department here at [Red Onion] that because Terah has no documentation of any hormonial treatment or a gender dysphoria [diagnosis] so we can't treat the offender just off … self-report."

With regard to Dr. Malone, Morris alleged only that he wrote Dr. Malone on seven occasions requesting treatment for GID.  Morris's Complaint does not include any allegations as to Dr. Malone's role or responsibilities with the VDOC other than to state that she is "Chief Psychologist for the State of Virginia."

---

[7] While these facts are not contained in Morris's Complaint, the court will consider the facts alleged in Morris's other pleadings with regard to the issue of plausibility of Morris's claim. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-63.

With regard to Schilling, Morris alleged that he wrote Schilling on two occasions requesting treatment for GID, but received no response.  Morris also alleged that on December 13, 2016, Schilling responded to Morris's Level II appeal of a Level 1 grievance decision. In his memoranda in opposition, Morris states that this grievance addressed his request for treatment for GID. (Docket Item No. 54-1 at 8.)

With regard to Defendant Artrip, Morris alleged that Artrip responded at Level I to a grievance Morris filed in an attempt to gain treatment for GID. The Complaint does not contain any allegations that Artrip was involved in any way in determining what mental health or medical treatment Morris should receive.

With regard to Dr. Lee, Morris alleged that he wrote Dr. Lee on eight occasions seeking treatment for GID. Morris alleged: "All responses was responded with bias, unethical [professional] judgments." Morris also alleged that Dr. Lee "signed off on" a gender dysphoria assessment conducted by Huff and Fletcher and a gender dysphoria assessment conducted by Trent, both of which Morris alleged contained false statements.

With regard to Dr. McDuffie, Morris alleged that on October 29, 2015, Dr. McDuffie yelled that Morris did not have a gender identity problem and told Morris, "I don't want to ever hear you discuss this subject again." Morris alleged that Dr. McDuffie told the escorting officers to get Morris "the hell out of" there. Morris also alleged that he has requested hormonal treatment from Dr. McDuffie on January 28, 2016, April 21, 2016, and June 24, 2016. Morris also stated that, on January 20, 2017, Dr. McDuffie recommended that Morris should be referred to an expert in diagnosing and managing individuals with gender identity dysphoria.

Morris also alleged that the Mental Health Department, including Fletcher, Buchanan, Trent, Huff, Adams and Dr. McDuffie, had determined that appropriate treatment was a "monthly office visit."

With regard to Adams, Morris alleged that he told Adams on May 20, 2016, that he "still felt suicidal." Morris said that Adams insisted the he looked stable to her. He said that soon afterward two officers "dragged me with shit smeared all over me through … medical because I refuse[d] to walk but then they finally grabbed a wheelchair and moved me to … mental health tie down cell … and placed me in 5-point[] [restraints]." Morris also alleged that Adams released him from five-point restraints on May 21, 2016, but kept him on 15-minute watch. Morris stated that Adams told him on November 14, 2016, that he was not scheduled to see any psychiatrist at that time. Morris alleged that he sent a request to Adams on November 27, 2016, asking why Morris was being refused entry into the mental health pod, which Adams ran. Morris alleged that Trent responded to this request.

With regard to Huff, Morris alleged that Huff received Morris's November 13, 2016, request sent to Barksdale from Phipps and gave it to Trent to respond. Morris also alleged that Huff came to his cell door with Buchanan on October 24, 2016, and saw Morris "on the sink ready to jump off." Morris stated that Huff told him "chill out clear your head and in a couple of days I'm [going to] send you back to your building and if we have to tie you down it's gonna be in one of the mental health cells there which has no camera because I don't like you being in medical." Morris also stated that Huff instructed Buchanan to take Morris's boxers and give him a smock and safety blanket. Morris also alleged that Huff and Fletcher conducted a gender dysphoria assessment on him and "made the assumption that I

have a history of sexual battery." In his memorandum in opposition, Morris also alleged that Huff supervises all psychology associates at Red Onion and that he makes the final decision on any consultation request. (Docket Item No. 54-1 at 3.)

In addition to the above incident, Morris alleged that Buchanan saw him on October 22, 2016, and left him in five-point restraints because Morris stated that he still wanted to commit suicide. Morris also alleged that Buchanan told him on October 22, 2016, that he had to be receiving hormones before entering prison to receive treatment. Morris also stated that Buchanan had Morris released from five-point restraints on October 23, 2016, even though he told Buchanan that he still wanted to kill himself.

With regard to Fletcher, Morris alleged that he spoke with her on November 12, 2015, regarding his stress level over not being treated for GID and Fletcher told Morris that "they" could not treat Morris because he did not have any documents showing that he was ever on any type of hormone treatment. Morris alleged that he was placed on 15-minute watch on November 23, 2015, because Fletcher intercepted a letter Morris attempted "to send out through somebody [else's] name which was suppose[d] to go to Armor Correctional Health Services, Inc., … [regarding] being denied hormonial [sic] treatment." As stated above, Morris also alleged that Fletcher and Huff conducted a gender dysphoria assessment on him and "made the assumption that I have a history of sexual battery."

With regard to Salyor, Morris alleged that he "signed off on" one of the gender dysphoria assessments, which contained false information.

With regard to defendants Still and Collins, Morris alleged that they were present on May 17, 2016, when Morris "tried to seek treatment." Morris also alleged that Still was present on October 21, 2016, when Trent told Morris that he was not "gonna get the diagnosis you want because we don't see the feminine in you." Morris further alleged that, when, on October 21, 2016, Trent asked whether to put Morris in five-point restraints, Still responded, "we can either deal with it now or deal with it for 3 or 4 days but that means one of you has to come in…." Morris also alleged that Still co-signed Adams's order on May 21, 2016, to release him from five-point restraints, but keep him on 15-minute watch. Morris also stated that Still told him on May 21, 2016, that Dr. Ashan, a psychiatrist, was at the prison filling in for Dr. McDuffie and was going to come see Morris, but Dr. Ashan did not see Morris that day. In his memorandum in opposition, Morris also has alleged that Still and Collins were present for his interactions with Buchanan on October 22 and 23, 2016. (Docket Item No. 54-1 at 6.)

With regard to former Red Onion Warden Barksdale, Morris alleged that, on October 10, 2016, he sent a request form to Barksdale complaining that Mental Health was denying Morris's "proper and adequate diagnosis" of GID. Morris stated that Barksdale forwarded the request to Mental Health. Morris alleged that he sent another request to Barksdale on November 13, 2016, complaining that Morris had not been seen on November 10, 2016, for a 90-day follow-up with Dr. McDuffie. Morris alleges that this request was routed to Phipps in Medical, who, in turn, routed the request to Huff in Mental Health. Morris alleged that he sent a third request to Barksdale on November 27, 2016, asking why he was not being allowed to go to Mental Health. Morris said that Trent responded to this request on the same day. Morris also alleged that he sent requests to Barksdale on November

27 and December 6, 2016, alleging that Mental Health was falsifying information about him on their notes.

With regard to defendant Phipps, Morris alleged that Barksdale forwarded his November 13, 2016, request to her and that she forwarded the request on to Huff in Mental Health.

Based on the facts alleged by Morris, as set forth above, I find that Morris has sufficiently alleged that Dr. Cary, Dr. Lee, Trent, Huff, Buchanan, Fletcher, Saylor and Dr. McDuffie acted personally in the alleged deprivation of his constitutional rights. Morris has alleged that each of these defendants actively was involved in his diagnosis or treatment or was involved in approving his diagnosis and treatment. Morris has alleged that Dr. Cary was reviewing Morris's mental health treatment and had instructed the providers that they could not order the treatment requested by Morris without her approval. Morris has alleged that Dr. Lee and Saylor were involved in the review and approval of the diagnosis and treatment plan set out in the gender dysphoria assessments. Morris has alleged that Trent, Huff, Buchanan, Fletcher and Dr. McDuffie were the individuals who actually rendered diagnoses, treatment and treatment plans for him.

I find that Morris has not sufficiently alleged that the remaining defendants - - Dr. Malone, Schilling, Barksdale, Artrip, Phipps, Still and Collins -- acted personally in the alleged deprivation of his constitutional rights. With regard to Dr. Malone, Schilling, Barksdale, Artrip and Phipps, Morris has alleged no more than that these defendants should have been aware of his request for treatment of his GID. According to Morris, he either wrote these defendants or his requests were directed at these defendants, or forwarded through these defendants, or these

defendants responded to his request for administrative remedies.  Morris has not alleged that any of these defendants were involved in offering treatment or making decisions with regard to what treatment was offered to Morris. There is no liability under § 1983 for a prison administrator's response to a grievance process. *See Brown v. Va. Dep't of Corrs.*, No. 6:07cv00033, 2009WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). The mere fact that a defendant may hold a supervisory position, such as Warden, Assistant Warden, Health Services Director or Chief Psychologist, is not sufficient to show that a defendant was actively involved in Morris's alleged constitutional violations. *See Ross v. Reed*, 719 F.2d 689, 698 (4th Cir. 1983) (respondeat superior liability has no place  in § 1983 jurisprudence).

Morris has not alleged that Still and Collins, Red Onion security officers, had any role in his diagnosis or treatment. Instead, Morris has alleged simply that Still and Collins were present on two occasions when he was seeking treatment from mental health professionals. To bring a constitutional claim against nonmedical prison personnel for deliberate indifference to a serious medical need, an inmate must show that the officials were personally involved with a denial of treatment, deliberately interfered with a health care provider's treatment or tacitly authorized or were indifferent to the health care worker's misconduct. *See Miltier*, 896 F.2d at 854 overruled in part on other grounds by *Farmer*, 511 U.S. at 837). I do not find that the facts alleged against Still and Collins rise to this level.

Based on the above analysis, I recommend that the court grant the Motions and dismiss Morris's claim against all defendants except Dr. Cary, Dr. Lee, Trent, Huff, Buchanan, Fletcher, Saylor and Dr. McDuffie. With regard to these defendants, I find that Morris has sufficiently pleaded a cause of action for

deliberate indifference to a serious medical need. While it is true that a mere disagreement between an inmate and medical personnel over diagnosis or course of treatment is not sufficient to state cognizable constitutional claims under the Eighth Amendment, *see Miltier*, 896 F.2d at 851-52; *Wright*, 766 F.2d at 849; *Estelle*, 429 U.S. at 105-06, I read Morris's Complaint to allege more than mere negligence in diagnosis and treatment. I read Morris's Complaint as alleging that the remaining defendants knew that he suffered from GID and that failing to properly treat Morris could lead to serious harm, but they refused to render that diagnosis because they did not want the VDOC to incur the cost of treatment or because the VDOC has an implicit policy not to provide such treatment. I find that those facts "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Insofar as Morris seeks damages against any of the remaining defendants in their official capacities, that claim is not cognizable in a § 1983 suit and should be dismissed. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58 (1989). These defendants should remain named in their official capacities, however, because Morris also seeks injunctive relief.

Regarding the correctional defendants' claim that Morris's case should be dismissed for failure to exhaust, I find that there is no genuine dispute of material fact and that the evidence before the court shows that Morris did exhaust his administrative remedies, and I will recommend that the court deny the correctional defendants' motion on this ground, as well.

The Prison Litigation Reform Act of 1995, ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C.A. § 1997e(a) (West 2012). It provides as follows:

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007). A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734).

The Supreme Court has instructed that the PLRA also "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90. Therefore, in order to satisfy the exhaustion requirement, an inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his action to court. *See Woodford*, 548 U.S. at 90.

As stated above, the correctional defendants' motion on this basis must be treated as a motion for summary judgment because evidence outside of the pleadings on the issue of exhaustion has been offered to the court in the form of Messer's Affidavit. The standard for review on a motion for summary judgment is well-settled. The court should grant summary judgment only when the pleadings,

responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

The correctional defendants, through the inmate grievance records attached to Messer's Affidavit, have shown the court that Morris has fully exhausted his administrative remedies as to his claim that his GID is not being properly diagnosed or treated. These documents show that Morris filed Informal Complaint No. ROSP-16-INF-01894 on October 10, 2016. Informal Complaint No. ROSP-16-

INF-01894 specifically alleged that Morris was not receiving proper and adequate mental health treatment and specifically referenced his alleged GID. Morris then filed Regular Grievance No. ROSP-16-REG-00436, again, specifically referencing that he was being denied mental health treatment. Morris also appealed the unfavorable ruling on his Grievance at Level I to Level II, again referencing that he was being denied treatment for his GID.

The correctional defendants do not appear to argue that Morris pursued any of his administrative remedies in an untimely manner. Instead, they appear to argue that Morris should have pursued administrative remedies as to each individual instance he cited in his Complaint of how he was being denied mental health treatment. I hold that specificity was not necessary for Morris to fully exhaust his administrative remedies in this case.  As stated above, I interpret Morris's Complaint as raising one claim – a claim for deliberate indifference to his serious medical need for failing to diagnose and treat his GID. To properly exhaust, an inmate must give the agency, in this case the VDOC, a full and fair opportunity to review and address his claims. *See Woodford*, 548 U.S. at 89-90. While it may be argued that Morris did not fully exhaust his administrative remedies with regard to Red Onion's security staff or, even, its medical staff, the undisputed evidence before the court shows that Morris fully exhausted his administrative remedies with regard to Red Onion's mental health staff. His informal and formal filings make it clear that he was seeking a diagnosis of and treatment for GID.  Therefore, I find that Morris fully exhausted his administrative remedies prior to filing this case.

## PROPOSED FINDINGS OF FACTS AND
## CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Morris has failed to state a claim under § 1983 upon which relief may be granted against defendants Dr. Malone, Schilling, Barksdale, Artrip, Phipps, Still and Collins, in that Morris has failed to allege that these defendants acted personally in the alleged deprivation of his constitutional rights;

2.  Morris has adequately pleaded a § 1983 claim for deliberate indifference to his serious medical needs against the defendants Dr. Cary, Dr. Lee, Trent, Huff, Buchanan, Fletcher, Saylor and Dr. McDuffie; and

3.  There is no genuine dispute of material fact that Morris has fully exhausted his administrative remedies.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motions, insofar as Morris's claim against defendants Dr. Malone, Schilling, Barksdale, Artrip, Phipps, Still and Collins should be dismissed. I further recommend that the court deny the Motions with regard to the remaining defendants.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: February 14, 2018.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE