# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| TERAH C. MORRIS,<br><br>                             *Plaintiff*,<br>         v.<br><br>DR. MEREDITH CARY, *ET AL.*,[1]<br><br>                          *Defendants*. | CASE NO. 7:17-cv-00093<br><br>MEMORANDUM OPINION<br><br>SENIOR DISTRICT JUDGE NORMAN K. MOON |

      Plaintiff Terah C. Morris ("Morris"), an inmate at Red Onion State Prison, brought this pro se action under 42 U.S.C. § 1983, alleging defendant prison officials have been deliberately indifferent to her serious medical needs, in violation of her Eighth Amendment rights, by failing to provide adequate medical care for gender identity disorder ("GID").[2] This matter is before the Court on (1) the parties' motions for summary judgment (Dkts. 101, 120, 123, 134, 149); (2) the Report and Recommendation of United States Magistrate Judge Pamela Meade Sargent ("R&R") (Dkt. 167), to whom this matter was referred for proposed findings of fact and a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B); and (3) Plaintiff Morris' objections to the R&R (Dkt. 168).

      The Magistrate Judge recommended that Morris' motions for summary judgment (Dkts. 134, 149) be denied, the Defendants' motions for summary judgment be granted (Dkts. 101, 120,

---

[1] Morris named Dr. Elisabeth Carey as a defendant. However, Dr. Cary has informed the Court that her name is Meredith Cary. (Dkt. 36).
[2] Morris alleges she is a transgender female and has requested that she be referred to with feminine pronouns.

123), and judgment entered in favor of the Defendants. (Dkt. 167 at 54[3]). Plaintiff Morris has filed eight objections to the R&R. For the reasons set out below, the Court finds Morris' objections lack merit and will accept and adopt Judge Sargent's Report and Recommendation.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* In considering the matter, the court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. *F.D.I.C. v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

When a court refers a matter to a magistrate judge, any objections to the magistrate judge's R&R must be reviewed *de novo*. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see also* 28 U.S.C. § 636(b)(1). In addressing the objections, "[t]he district court does not need to provide an elaborate or lengthy explanation, but it must provide a specific rationale that permits meaningful appellate review." *Cruz v. Marshall*, 673 F. App'x 296, 299 (4th Cir. 2016). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and it "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). Further, the court will afford a pro se

---

[3] Page numbers refer to CM/ECF page numbers for the particular document cited.

litigant's objections and briefing a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## II. ANALYSIS

By way of summary, Morris is an inmate incarcerated at Red Onion State Prison, Virginia. Eight Defendants, including medical doctors and Qualified Mental Health Professionals, remain after the prior dismissal of several defendants. Morris brought this action in March 2017, alleging that, with respect to medical needs relating to her gender identity, "defendants knew . . . about my 'serious medical need' and failed or otherwise [are] still failing to respond . . . [or] provide me with any treatment or examine me . . . violat[ing] my Eighth Amendment Constitutional rights for the deliberate indifferen[ce] in denying me mental health and medical care . . . ." (Dkt. 1 (Complaint) at 14).

Defendant Everette McDuffie filed his motion for summary judgment on April 26, 2018. (Dkt. 101). Defendants William Lee and Meredith Cary filed a motion for summary judgment on May 29, 2018. (Dkt. 120). Defendants Donnie L. Trent II, Terrence M. Huff, T. Buchanan, Stephanie C. Fletcher, and Rick Saylor filed their motion for summary judgment on May 29, 2018. (Dkt. 123). Morris filed a cross-motion for summary judgment on June 25, 2018, against Defendants Cary and Lee. (Dkt. 134). Morris subsequently filed a cross-motion for summary judgment on July 25, 2018, against Defendants Fletcher, Huff, Trent, Buchanan, and Saylor. (Dkt. 149).

### A. The Eighth Amendment Standard

The Eighth Amendment's prohibition of "cruel and unusual punishment" imposes a duty on prison officials to "provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825,

832 (1994); *see Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

First, "*Farmer*'s objective prong requires plaintiffs to demonstrate that the deprivation alleged [was], objectively, sufficiently serious." *Id.* (internal quotation marks omitted). In order to be sufficiently serious, the deprivation must pose "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." *De'lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted). A medical need is sufficiently serious when it has either "been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

"Second, under *Farmer*'s 'subjective' prong, plaintiffs must show that prison officials acted with a 'sufficiently culpable state of mind.'" *Scinto*, 841 F.3d at 225. In conditions of confinement cases, "the requisite state of mind is deliberate indifference." *Id.* This means the officials knew of and disregarded an excessive risk to inmate health or safety. *Id.* Deliberate indifference requires "more than mere negligence" but less than acts or omissions done for the very purpose of causing harm or with knowledge harm would result. *Id.*

**B.    The R&R and Plaintiff's Objections**

The R&R recommended the Court enter summary judgment in favor of all remaining Defendants. (Dkt. 167). Plaintiff raises eight objections to the R&R. Six of the objections are to statements made by various Defendants in evidence and quoted or referred to by Judge Sargent in

her recitation of facts. Morris objects to each statement as "unduly burdensome." (*Id.*). The remaining objections relate to language which appears in the R&R's analysis. The Court will, where warranted, construe these objections as objections to the Judge Sargent's reliance on these statements in her conclusion that Defendants were not deliberately indifferent to Plaintiff's serious medical needs.

1. **Objection 1**

Morris objects to the R&R's finding that: "Dr. McDuffie [a contractual psychiatrist who provides services at the prison] said that he is not involved in, and has no control over, offender housing decisions, staffing decisions or security decisions, including what clothing or accessories offenders are permitted in their cells." (Dkt. 168 at 1-1; *see* Dkt. 167 at 4 (citing Dkt. 102-2 ("McDuffie Declaration") at 2)). The objected to statement follows the R&R's factual recitation that according to Dr. McDuffie he is one member of the multidisciplinary mental health treatment team that facilitates mental health treatment and makes mental health treatment decisions concerning offenders. (Dkt. 167 at 4). Morris makes the latter statement the primary ground for her objection, adding that Dr. McDuffie is the only primary attending psychiatrist at Red Opinion State Prison. (Dkt. 168 at 2).

Morris points to no evidence in the record that Dr. McDuffie, a contractual psychiatrist, has or would likely have authority to make decisions as to what offenders are permitted in their cells, whether clothing, accessories or other items. Nor does Morris provide a connection between Dr. McDuffie's alleged authority and her claim of deliberate indifference beyond what she argued previously with respect to Dr. McDuffie's direct treatment of her. Rather, the undisputed evidence is that Dr. McDuffie treated Morris throughout an evolving diagnosis of GID and referred her to an outside consultant with more experience in GID as necessary, findings to which she did not

5

object. (*Compare* Dkt. 167 at 4-9 *with* Dkt. 168 ; *see also* McDuffie Declaration at 4-5). Objection 1 fails to raise a genuine dispute with respect to a material fact and will be overruled. Morris' objection relating to provision of feminine clothing and hygiene products, however, will be discussed below with respect to Objections 4 and 8.

2. **Objection 2**

Morris objects to the R&R's factual reference to a February 8, 2017 Psychological Report which noted that Defendant Trent had met with Morris five times and that with the exception of one of those meetings, each was related to Morris' disruptive behavior (threats toward staff, disruptive behavior, acting out, etc.). (Dkt. 168 at 3 (citing Dkt. 102-1 at 60); *see* Dkt. 167 at 18). Morris' grounds for the objection, however, do not address the R&R's statement to which she objects. Rather, Morris notes the Psychological Report stated that Morris often voiced a desire to live her life as a female. (Dkt. 168 at 3 (citing Dkt. 102-1 at 62)). Morris does not link this objection to any alleged deficiency in the R&R. Indeed, the R&R includes several references to Morris' expressed desire to live as a female. (*E.g.*, Dkt. 167 at 18, 20, 26). Objection 2 will be overruled.

3. **Objection 3**

Morris objects to other language in the February 8, 2017 Psychological Report, specifically that "it was noted that she [Morris] had no documented instances of discussing having a vagina versus a penis and/or female breasts." (Dkt. 168 at 4; Dkt. 167 at 19 (citing Dkt. 102-1 at 62)). Morris objects, stating that "I often voiced a desire to live my life as a female[.] I don't need to specifically quote I want a 'vagina' and/or a/some Breast." (Dkt. 168 at 4).

Morris does not take issue with the Report's statement itself. Further, the R&R in the sentence after the one to which Morris "objects" states that the Report noted that "Morris often

6

voiced a desire to live her life as a female." (Dkt. 167 at 20). Morris does not assert that the Report's author in fact had documented instances of Morris' desire of having a vagina or female breasts at the time of the Report. Indeed, Morris' objection itself demonstrates that she had not expressed such a preference specifically, at least as to Trent. (Dkt. 168 at 4). To the extent she claims there should have been a finding, the R&R specifically noted that Dr. Sara Boyd,[4] in an evaluation provided ten months after the Psychological Report, "stated that Morris expressed a desire to undergo vaginoplasty and feminizing hormones to gain the sex characteristics of the other gender and intentions to live as a woman." (Dkt. 167 at 24 (citing Dkt. 102-1 at 51)). The R&R facts included Morris' statements related to a desire for a vagina (vaginoplasty) and female breasts (sex characteristics). Objection 3 will be overruled.

4. **Objection 4 and Objection 8**

Objections 4 and 8 address the R&R's finding and conclusion relating to the implementation of Dr. Boyd's recommendations. Objection 4 is to the R&R's factual recitation that Defendant Dr. William "Lee stated that Boyd's recommendations were being implemented by the QMHPs [Qualified Mental Health Professionals] at Red Onion." (Dkt. 168 at 5; *see* Dkt. 167 at 31). Objection 8 is to the R&R's conclusion that: "The uncontradicted evidence before the court is that Boyd's recommendations have and are being followed in most respects, although perhaps, again, not as quickly as Morris might desire." (Dkt. 168 at 8; *see* Dkt. 167 at 53).

Morris objects, claiming that "Dr. Boyd's recommendations are not being followed." (Dkt. 168 at 8; *see* Dkt. 168 at 5). In support of her argument that Dr. Boyd's recommendations are not being followed, Morris submits four exhibits related to her clothing and hygiene requests in early

---

[4] Dr. Boyd is a licensed clinical psychologist at the Institute of Law, Psychiatry and Public Policy at the University of Virginia Forensic Clinic. (McDuffie Declaration at 4; Dkt. 102-1 at 54).

7

2019, to which she received responses that she could order Security Level Specific items from the Commissary, which does not appear to include feminine hygiene products and certain clothing and lotions Morris wants. (*See* Dkt. 168-1 (exhibits)). Morris asserts that these exhibits demonstrate that "Dr. Boyd's recommendations are not being followed." (Dkt. 168 at 8). However, "[t]he right to treatment of GID is not commensurate with the right to a specific type of treatment." *Arnold v. Wilson*, No. 1:13CV900, 2014 WL 7345755, at *9 (E.D. Va. 2014). The question, with regard to this objection, is whether there is a genuine dispute as to a material fact which precludes a conclusion that Defendants are entitled to judgment as a matter of law.[5]

A review of the record reveals that Dr. Boyd recommended "a progression of treatment, starting with more reversible interventions, with reassessment of [Morris'] symptoms in approximately one year." (McDuffie Declaration at 4-5; Dkt. 102-1 at 52-53 (Dr. Boyd's December 3, 2017 Psychological Evaluation)). Dr. Boyd also recommended counseling and psychoeducation about the social aspects of living as a transgender woman in the community. (McDuffie Declaration at 5; Dkt. 102-1 at 54). Dr. Boyd stated that Morris would benefit from access to feminine clothing and hygiene products. (McDuffie Declaration at 5; Dkt. 102-1 at 53). Actually, Dr. Boyd's recommendation stated that "Ms. Morris would *likely* benefit, clinically, from access to feminine clothing and hygiene items . . . ." (Dkt. 102-1 at 53 (emphasis added)). Further, the R&R noted that in the memorandum in support of one of her cross-motions for summary judgment, Morris stated that she had been provided with bras and panties although no other feminine clothing.[6] (Dkt. 167 at 51 (citing Dkt. 134-1 at 4)).

---

[5] The Court also undertakes the analysis with respect to whether Plaintiff is entitled to judgment as a matter of law on her motions for summary judgment.

[6] The R&R notes Morris' statement and her denial that she was provided with feminine hygiene products. (Dkt. 167-68). Thus, the Magistrate Judge reached her conclusion fully aware of Morris' statements. This Court, however, conducts a *de novo* review.

Dr. Boyd also recommended Dialectic Behavior Therapy, a type of psychotherapy, while noting that other evidence-based interventions also existed. (Dkt. 137 at 7 (citing McDuffie Declaration at 5); *see* Dkt. 102-1 at 54). As noted in the R&R, at the time of Dr. McDuffie's Declaration Morris was receiving psychotherapy and was on the path to receiving hormone therapy treatment. (Dkt. 137 at 7; *see* McDuffie Declaration at 5). Morris has not challenged any of these factual statements. In light of the undisputed facts regarding Dr. Boyd's recommendations and the resulting response, the Magistrate Judge's conclusion that Dr. Boyd's recommendations were being followed "in most respects" is correct. Objections 4 and 8 will be overruled.

5.    **Objection 5**

Morris objects to the R&R's statement that Defendant "Trent said that his notes reflected that Morris did not attempt to discuss gender dysphoria at [a November 22, 2016] meeting." (Dkt. 168 at 6; *see* Dkt. 167 at 36 (citing Trent Affidavit at 6)). Morris does not state an objection to the accuracy of the statement itself or challenge the underlying accuracy of Trent's notes. As support, Morris merely quotes the prior line in the R&R, which stated that Trent told Morris her next assessment would be six months from the prior assessment. Objection 5 will be overruled.

6.    **Objection 6**

Morris objects to the R&R's recitation that Trent stated that the Qualified Mental Health Professionals at Red Onion State Prison had responded appropriately for contact and treatment. (Dkt. 168 at 6-7; *see* Dkt. 167 at 37 (citing Trent Affidavit at 7)). Granted, this is an expression of opinion, although the R&R accurately reflects what Trent stated under oath. Importantly, Morris has not objected to the recitation of facts as stated in other parts of the Trent Affidavit as discussed on pages 31 to 39 of the R&R on the course of her treatment, except for that in Objection 5 which, as noted, is not an objection to the factual finding itself. Objection 6 will be overruled.

### 7. Objection 7

Finally, Morris objects to the R&R's analysis section statement that while Morris referenced a number of video recordings, she did not provide these recordings to the court or request the court to order the defendants to provide the recordings to the court. (Dkt. 168 at 7; *see* Dkt. 167 at 52). The referenced video recordings, however, were discussed in the memorandum in support of one of her cross-motions for summary judgment as demonstrating that being denied a diagnosis for her gender identity disturbances made her cry during a recorded conversation, depicting her movement from a cell with three cameras to one with no cameras during which she was dragged, and showing her removing herself from restraints. (Dkt. 149-1 at 2-5). The Court finds that this evidence is of a type considered in the R&R. (*E.g.*, Dkt. 167 at 12, 18, 34, 42, 43, 44 (suicide thoughts and threats); 20 (crying)). Further, the Court finds that the items represented to be on the videotapes would not create a genuine dispute as to a material fact. Objection 7 will be overruled.

The Court has appropriately reviewed the portions of the R&R to which objection was made and has made a *de novo* determination as to those portions. The Court has also reviewed the R&R as a whole as to each of the motions for summary judgment. The Court finds the R&R appropriately applied the law to the undisputed material facts and correctly concluded that Defendants are entitled to summary judgment.

The Court, therefore, will accept and adopt the Magistrate Judge's Report and Recommendations in full.

### III. CONCLUSION

After undertaking a *de novo* review of those portions of the R&R to which Plaintiff Morris objected, the Court finds Plaintiffs objections should be overruled and that the R&R should be

adopted in full. Accordingly, the Court will enter an order overruling Plaintiff's Objections (Dkt. 168), adopting the Magistrate Judge's R&R in full (Dkt. 167), granting the Defendants' Motion for Summary Judgment (Dkts. 101, 120, and 123), denying Plaintiff's Motions for Summary Judgment (Dkts. 134, 149), and striking this action from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to Plaintiff, all counsel of record, and to United States Magistrate Judge Pamela Meade Sargent.

Entered this  29th  day of March, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE